# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

------------------------------------------------------x
                                       :

UNITED STATES OF AMERICA      :      Case No. 3:00CR00169(JCH)
                                         :

v.                                      :
                                       :

RODNEY CANADA          :      June 9, 2008
                                       :
------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF MOTION FOR REDUCTION IN SENTENCE

The defendant, Rodney Canada, submits this memorandum through counsel in further support of his pro se motion for reduction in sentence under the amended guidelines applicable to crack cocaine [Doc. 14], and in response to the memorandum in opposition to a reduction in sentence filed by the Government, [Doc. 16] and to the Court's Order To Show Cause. [Doc. # 15]  Mr. Canada respectfully requests that the Court enter an amended judgment pursuant to 18 U.S.C. § 3582(c)(2) reducing his sentence from 140 months to 120 months of incarceration.

The United States Sentencing Commission has amended the drug quantity table set forth in U.S.S.G. § 2D1.1 to reduce the base offense level for offenses involving crack cocaine, and has made the amendment retroactive.  See U.S.S.G., App. C, Amdt. 706 (2007).  The defendant entered a guilty plea to an offense involving 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841, and on May 9, 2001, this Court sentenced Mr. Canada principally to a term of 140 months of imprisonment and five years of supervised release.  That sentence was based on § 2D1.1 and should therefore be reduced in accordance with Amendment 706 to the Guidelines.

The PSR prepared in connection with Mr. Canada's original sentencing found that the base offense level applicable to his offense – because it involved 50 or more grams of crack cocaine – was 32.  PSR ¶ 14.  The PSR also recommended an increase in the offense level under § 4B1.1 because the defendant had previously sustained two felony convictions for controlled

substance offenses, PSR ¶ 20, and a decrease under § 3E1.1 for acceptance of responsibility.  The

PSR found that the final adjusted offense level should be 34.

The PSR also found that Mr. Canada had a total of three prior convictions, and a total of

11 criminal history points, putting him in Criminal History Category V.  PSR ¶ 27.  The PSR

recommended an increase to CHC VI under § 4B1.1.  The PSR recommended a guidelines range

of 262 to 327 months of incarceration, but also noted: "The Court may consider a downward

departure pursuant to Section 4A1.3, Adequacy of Criminal History Category, given that the

defendant's criminal history category may overrepresent the defendant's actual criminal

conduct."  PSR ¶ 87.  At sentencing, the Court granted a downward departure under § 4A1.3 to

offense level 29 and CHC V – in other words, to the offense level and CHC applicable to the

defendant without regard to the career offender provision.  Statement of Reasons at 2.  The

Guidelines range dictated at these levels was 140 to 175 months, and the Court imposed a term

of imprisonment between 140 months, the bottom of the applicable Guidelines range.

The base offense level applicable to offenses involving 50 or more grams of crack has

now been lowered from 32 to 30.  Subtracting three levels for acceptance of responsibility, the

new offense level applicable to Mr. Canada is 27, and the new Guidelines range, at CHC V, is

120 to 150 months.  The bottom of this new range is 120 months, and that is the appropriate

sentence for Mr. Canada.

## I.     This Court Has the Power to Resentence Mr. Canada

The Court may modify a defendant's term of imprisonment when the United States

Sentencing Commission makes an amendment to the Guidelines retroactive and the guideline

that was amended was part of the basis of the defendant's guideline range:

> The court may not modify a term of imprisonment once it has been imposed
> except that —

. . . .

(2)      in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

Amendment 706 took effect on November 1, 2007.  See U.S.S.G., App. C, Amdt. 706 (2007).  On December 7, 2007, the Sentencing Commission made Amendment 706 retroactive. See U.S.S.G. § 1B1.10 (Supp. Mar. 3, 2008).  The defendant was sentenced prior to the enactment of the amendment, and the Court now has the authority to review and reduce the defendant's sentence, taking into account the factors set forth in 18 U.S.C. § 3553(a).

**II.      Mr. Canada's Sentence Was "Based On" § 2D1.1 of the Guidelines**

Section 3582(c)(2) requires only that a defendant's guideline range have been "based on" a guideline provision that was retroactively amended.  See 18 U.S.C. § 3582(c)(2).  The Government contends that Mr. Canada's sentence was "not based on the guidelines section retroactively altered by Amendment 706" because the defendant was eligible for an increase in his sentence as a career offender.  Gov't Memo at 7.  The Government's position ignores the fact that the Court, in sentencing Mr. Canada, actually **set aside the career offender guideline** and chose **instead** to sentence him under the § 2D1.1 guideline.

Chief Judge Chatigny has recently ruled in a virtually identical case that a defendant who receives a downward departure from the career offender guideline to the § 2D1.1 guideline is eligible for a reduction under the crack amendment.  In granting the two-level reduction, Judge Chatigny ruled as follows:

Defendant correctly argues that he qualifies for a reduction in his sentence pursuant

-3-

> to 18 U.S.C. § 3582(c)(2) because he was sentenced based on a range that has been
> lowered by Amended 706 of the Sentencing Guidelines.  Though the defendant was
> subject to sentencing as a career offender, the Court found that the career offender
> guideline significantly overstated the seriousness of his criminal history and
> likelihood of reoffense and therefore departed downward from offense level 34 and
> criminal history category VI to offense level 31 and criminal history category IV.

United States v. Darrell Harris, 3:97CR00171(RNC), Doc. # 40, May 12, 2008.  Judge Chatigny

then proceeded to reduce the defendant's offense level by two levels, from 31 to 29, and to

impose a sentence within the new guidelines range at the same point within that range as he had

selected at the time of the original sentencing.

The District of Minnesota reached the same conclusion in United States v. Nigatu,

holding that because the Court had departed downward under § 4A1.3 and thereby set aside the

potentially applicable career offender guideline, "the Court could not have imposed Nigatu's

sentence based on the career offender table in USSG § 4B1.1."  Id. , 2008 WL 926561 at *1 (D.

Minn. April 7, 2008) (emphasis added).  Instead, the Court found, "the record reflects that the

2-level decrease in Amendment 706 applies" because Nigatu had been sentenced to a term of

imprisonment based on § 2D1.1, and thus on a sentencing range that was subsequently lowered.

The Eastern District of Pennsylvania has reached the same conclusion.  See United States

v. Poindexter, -- F. Supp. 2d --, 2008 WL 1946821 (E.D. Pa. May 2, 2008).  In Poindexter, the

Government argued, as it does here, that the defendant's sentence was not "based on"§ 2D1.1

because he was eligible for an increase in his sentence under the career offender provision.  The

Court disagreed, and granted the defendant's motion for a reduction:

> Judge Waldman did not sentence Poindexter under the career offender guideline.
> Rather, he determined that the career offender designation "overrepresents the total
> offense level in this case." . . .  Because of that finding . . . Judge Waldman reduced
> Poindexter's offense level to that which he would have faced absent the career
> offender designation.
> . . .
>      18 U.S.C.  § 3582(c)(2) speaks of lowering a sentence that was imposed

"based on" an amended guideline.  In U.S.S.G. § 1B1.10, which is the Sentencing Commission policy statement regarding the implementation of Section 3582, the Commission speaks of "the guideline range applicable to [the] defendant."  At root, then, this motion comes down to the question of whether Poindexter was sentenced "based on" U.S.S.G. § 2D1.1.

. . .

     [I]f we ask what was "the range under which defendant was actually sentenced," we must conclude that Section 2D1.1 governed Poindexter's sentence. The record that is available to us provides no basis for concluding that Judge Waldman's selection of offense level 27 had any basis other than U.S.S.G. § 2D1.1, the section that U.S.S.G. § 4A1.3 specifically directs the sentencing judge to reference in this situation.

. . .

     Because Poindexter's sentence is "based on" a guideline that has been revised, we have discretion to reduce his sentence under 18 U.S.C. 3582(c)(2).  We will exercise that discretion and modify his sentencing range based on the newly-effective version of the drug quantity table in U.S.S.G. § 2D1.1(c).  Based on the drug quantities in Poindexter's case, his base offense level is 28, which we reduce to 25 as a result of his acceptance of responsibility. That, combined with his criminal history category of VI, results in a guideline range of 110-137 months.

Id. at *2-*4 (internal footnotes omitted).

     The same reasoning that was set forth in <u>Harris</u>, <u>Nigatu</u>, and <u>Poindexter</u> applies here.

**Because this Court found that application of the career offender guideline to Mr. Canada would improperly overstate his criminal history, the Court did not impose its sentence <u>based on</u> the career offender guideline.**  Instead, the Court based its sentence on the range dictated by § 2D1.1.  That range has now been lowered and, accordingly, Mr. Canada is now eligible for a reduction to the new § 2D1.1 sentencing range.

**III.**   <u>**Kimbrough & Gall**</u>

     The Second Circuit has recently noted that the Supreme Court's decisions in <u>Kimbrough v. United States</u>, 128 S. Ct. 558, 568-69 (2007), and <u>Gall v. United States</u>, 128 S. Ct. 586, 600 (2007), confirm

     the broad deference that this Circuit has afforded the sentencing discretion of the district courts.  However, until <u>Kimbrough</u> and <u>Gall</u>, this Circuit tended to discourage district courts from deviating from the crack cocaine Guidelines.  Our opinion in

> United States v. Castillo, 460 F.3d 337 (2d Cir. 2006), may have been over-read or misread to inhibit any deviation.  District courts may also have been inhibited from exercising their full discretion by the fact that the Sentencing Commission borrowed the 100-to-1 Guidelines ratio from the mandatory minimums for drug offenses decreed by Congress.  Id. at 567 (explaining origin of Guidelines crack to powder ratio).  Therefore, when a district court sentenced a defendant for a crack cocaine offense before Kimbrough, there was an unacceptable likelihood of error; certainly, the court acted under the influence of a widespread assumption that is now known to be erroneous.

United States v. Regalado, 518 F.3d 143, 147 (2d Cir. 2008).  The holdings of Kimbrough and Gall must be taken into account by district courts when considering a resentencing pursuant to the crack amendments:

> In deciding whether to modify the sentence, district courts must consider the factors set forth in 18 U.S.C. § 3553(a) anew and in light of Gall and Kimbrough to the extent that they may be applicable, and relevant Sentencing Commission policy statements.  See 18 U.S.C. § 3582(c)(2).

Id. at 151.

At the time Mr. Canada was sentenced in 2001, this Court could not have been aware of the full scope of its authority to consider the disparity between crack and powder sentences.  Indeed, at that time, the Guidelines were binding and the Court lacked authority to impose a sentence outside their bounds.  Before Kimbrough and Gall, it was believed that courts had no right to disagree with policy decisions made by the Sentencing Commission and embodied in the Guidelines; now, we know that such disagreements – including a disagreement with the policy underlying the disparity between crack and powder offenses – are legitimate bases for sentencing decisions, and thus, the Court may consider them now.

The unfairness of the disparate treatment between crack and powder cocaine offenses is well-documented and indisputable.  See generally United States Sentencing Commission, Report to Congress:  Cocaine and Federal Sentencing Policy (May 2007) (hereinafter "2007 Sentencing Commission Report"); see also Kimbrough, 128 S. Ct. at 568-69.  The disparity itself and the

underlying assumptions giving rise to it have largely been discredited.

> First, the Commission reported, the 100-to-1 ratio rested on assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support. [The] ratio Congress embedded in the statute far 'overstates' both 'the relative harmfulness' of crack cocaine, and the 'seriousness of most crack cocaine offenses'. For example, the Commission found that crack is associated with 'significantly less trafficking-related violence . . . than previously assumed.' It also observed that 'the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure.' The Commission furthermore noted that 'the epidemic of crack cocaine use by youth never materialized to the extent feared.'
>
> Second, the Commission concluded that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers. Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers. But the 100-to-1 ratio can lead to the 'anomalous' result that 'retail crack dealers get longer sentences than the wholesale drug distributors who supply theym the powder cocaine from which their crack is produced.'
>
> Finally, the Commission stated that the crack/powder sentencing differential 'fosters disrespect for and lack of confidence in the criminal justice system' because of a 'widely-held perception' that it 'promotes unwarranted disparity based on race.' Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 ratio are imposed 'primarily upon black offenders.'

Kimbrough, 128 S. Ct. at 568 (internal citations omitted).

After the Supreme Court issued this ruling, the Sentencing Commission made its amendments to § 2D1.1 retroactive, in an effort "to alleviate some of the urgent and compelling problems associated with the penalty structure for crack cocaine offenses," 2007 Sentencing Commission Report, at 220, but acknowledged that the amendment is not a complete response:

> The Commission . . . views the amendment only as a partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to these problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

2007 Sentencing Commission Report, at 10.

It was a recognition of a very serious flaw in the sentencing guidelines that led to the amendment at issue here. There can be no question but that "the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)." Kimbrough, 128 S. Ct. at 575. The significance of this flaw is not lessened by the fact that a specific defendant had prior convictions that made him potentially eligible for application of the career offender provision of the Guidelines. Mr. Canada's sentence was unjustly severe because of the dramatic disparity between crack and powder cocaine offenses in the guidelines applicable at the time of his sentencing – guidelines which were then binding on this Court. The Sentencing Commission recognized this injustice and set out to address it by enacting an amendment that would close the gap, if only slightly, between sentences for the two forms of cocaine. Mr. Canada was sentenced under the old guidelines range that embodied the unfair disparity, and he is now entitled to a correction of that unfairness.

## CONCLUSION

Mr. Canada respectfully requests that this Court reduce his sentence of incarceration from 140 to 120 months. The guidelines range on which Mr. Canada's sentence was based has been reduced by Amendment 706 from 140-175 months to 120-150 months. The Court found that the bottom of the Guidelines range was appropriate at the original sentencing, and nothing has changed to make that any less appropriate today. Accordingly, this Court should exercise its discretion under U.S.S.G. § 1B1.10, 18 U.S.C. § 3582(c), and § 3553(a) and reduce the defendant's sentence to 120 months, which would be sufficient but no greater than necessary to fulfill the purposes of sentencing.

Respectfully submitted,

The Defendant,
Rodney Canada

Thomas G. Dennis
Federal Defender

Dated: June 9, 2008                    _____/s/_____
                                       Sarah A. L. Merriam
                                       Assistant Federal Defender
                                       265 Church Street, Suite 702
                                       New Haven, CT  06510
                                       Bar No. ct25379
                                       Phone: 203-498-4200
                                       Fax: 203-498-4207
                                       Email: sarah_merriam@fd.org

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2008, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/_____
        Sarah A. L. Merriam