UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 3:00CR169 (JCH) |
| | : | |
| RODNEY CANADA | : | September 4, 2008 |

**GOVERNMENT'S SUPPLEMENTAL REPLY TO DEFENDANT'S**
**REQUEST FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)**

On August 28, 2008, the defendant submitted a supplemental memorandum attempting to distinguish the Court's recent ruling in United States v. Menafee, 3:04CR138(JCH), Doc. # 2158 (D.Conn., Aug. 5, 2008).   In Menafee, the Court properly concluded that a career offender was not eligible for a reduction under U.S.S.G. § 1B1.10 for the new crack amendment because, among other things, the retroactive amendment "does not have the effect of lowering the defendant's applicable guideline rage," a prerequisite to applying the amendment. Id. at 4.   The Court noted that the key issue in the §1B1.10 analysis is to determine whether the "applicable guidelines range" is calculated before or after the Court considers departures, correctly concluding that the phrase applied to the determination of the applicable offense level calculation *prior* to any departure. Id. at 6.  The defense now attempts to distinguish Menafee by arguing that a departure under § 4A1.3 for overstated criminal history really is not a "true" departure and thus the phrase "applicable guidelines range" could include a § 4A1.3 "adjustment" without doing violence to the construction of the guidelines.

The government submits this brief response.  There is no need to follow defense counsel down the rabbit hole to create a novel category of less-than-true departures to circumvent the Sentencing Commission's plain intent.  The defense is simply straining to make complex and

confusing that which, for the guidelines, is remarkably straightforward on its face. The Sentencing Commission has already and repeatedly expressly made clear that § 4A1.3 reflects a true, bonafide, 100%-real ground for "departure," not an "adjustment" or any other term of art. As a consequence and as explained in prior submissions, the crack amendment simply does not apply to career offender cases because the amendment does not change the "applicable guidelines range" prior to any departure.

Far from ambiguous, the 2000 Guidelines Manual applicable to the defendant's sentencing states under § 4A1.3 that, if the criminal history category overrepresents the seriousness of the defendant's criminal history, the court may "consider a *downward departure* from the guidelines." Id. (emphasis added). The Section goes on to explain how the court is to undertake the guided departure, referencing the term "departure" no less than ten times. Not once does the guideline use the term "adjustment." The 2007 Guidelines Manual is even more explicit.[1] The Section is appropriately titled "4A1.3 *Departures* Based on Inadequacy of Criminal History Category." Id. (emphasis added). The Section discusses grounds for "upward departures," "downward departures" and limitations on "departures" based on certain defendant characteristics. Id. Again, the Commission is careful to use the term-of-art "departure," rather than other terms such as "reductions" or "adjustments," and, if there were any lingering doubt, the application note to Section 4A1.3 clarifies the terminology even further:

for purposes of this policy statement [§ 4A1.3], the terms "depart", "departure",

---

[1] The government references the November 1, 2007 Guidelines Manual in this submission for several reasons. It provides clarifying amendments as to the interpretation and application of prior guidelines. See, e.g., 1B1.11(b)(2). It also is the most recent guidance from the Sentencing Commission and gives context to the new 1B1.10, which was included in the supplement to that 2007 Guidelines.

        "downward departure", and "upward departure" have the meaning given those terms in Application Note 1 of the Commentary to § 1B1.1 (Application Instructions).

§ 4A1.3 App. Note 1.   The referenced application note in § 1B1.1 actually defines the term "Departure" for purposes of the guidelines.   It, in fact, expressly mentions § 4A1.3 and explains that a *departure* under § 4A1.3 means the "assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence outside the applicable guidelines range." <u>Id.</u>   The definition further explains that "downward departure" is a departure "that effects a sentence less than a sentence that could be imposed under the applicable guideline range . . . " <u>Id.</u>   The Sentencing Commission could not have been more explicit.  A departure under Section 4A1.3 is as genuine a departure as any other departure in the guidelines.

    Ignoring the Commission's carefully defined terms in § 4A1.3 and § 1B1.1, the defendant instead refers us to the 1987 introductory chapter to the Guidelines Manual, asserting that the Commission intended *three* types of departures; that § 4A1.3 is not an enumerated type; and thus it is not a "true" departure.   Of course the original three-types-of-departure wording was removed by the Sentencing Commission in 1989 and later modified further. <u>See, e.g.</u>, Appendix C, amendment 68 (1989) and amendment 307 (1990).   By the 2000 Manual, the Sentencing Commission in its general introduction described two generic kinds of departures: the first involving instances where the guidelines provided specific guidance for departure by analogy or other numerical or non-numerical suggestions, and the second involving unguided departures.  <u>See</u> 1A(4)(b).  The departure contemplated by § 4A1.3 under the 2000 Manual plainly involved the first type of departure as the Section at length provided detailed suggestions how the court has to fashion a departure.

By 2007, the introductory section so championed by the defense had been shortened by the Commission to one paragraph, describing the general authority for the Guidelines. See 2007 Manual § 1A1.1. Instead the original language touted by the defendant had been relegated to appended materials simply to provide context and historical information. § 1A1.1 (commentary). Thus, the trip back to the early days of the guidelines hardly provides support for the argument that the 2008 Sentencing Commission in adopting the new § 1B1.10 intended § 4A1.3 to be anything other than a standard ground for departure – just as the Commission had expressly defined it to be.

The defendant also misreads the step-by-step process to apply the guidelines as set forth in steps (a) through (i) of Section 1B1.1, again trying to recast § 4A1.3 as something other than a ground for departure. The defendant contends that Chapter Four calculations are generally mentioned in the applications instructions in step (f) of § 1B1.1, a step before the court is to determine the guidelines range in the sentencing table under step (g). Because there is no express mention of Chapter Four after step (f), the defendant mistakenly asserts that the Sentencing Commission must have intended that the court apply § 4A1.3 before determining the relevant sentencing range. It cannot be a "true" departure because, as the defense contends, true departures are to be applied in the subsequent step (i), after the court determines a sentencing range.

But this creative interpretation simply ignores the language of step (i). Under step (i), the sentencing court is instructed to refer to "Parts H and K of Chapter 5, Specific Offender Characteristics and Departures, and to *any other policy statements* or commentary in the guidelines that might warrant consideration in imposing sentence." § 1B1.1(i) (emphasis added).

Because § 4A1.3 is expressly labeled by the Sentencing Commission in the 2000 Manual to be a "policy statement," see § 4A1.3 (descriptive heading), it is appropriately and reasonably considered by the court under step (i) as a ground for departure *after* the determination of the initial guidelines sentencing range, just like the court considers departures under Part K of chapter 5, such as substantial assistance (§ 5K1.1) or early disposition programs (§ 5K3.1). Again, by expressly labeling Section 4A1.3 as both a policy statement and ground for departure, the 2007 Manual gives even stronger indication that an overstated-criminal-history departure is properly calculated in step (i), after determining the initial applicable criminal history and sentencing range. See also § 1B1.1 application note 1(E) (defining § 4A1.3 as a departure). That the Commission sought to treat § 4A1.3 similar to Chapter 5 departures under step (i) is plainly supported by the application note in § 5K2.0, which lumps § 4A1.3, along with § 5K1.1 (substantial assistance), and § 5K3.1 (early disposition programs), as other types of departures covered by more specific departure guidelines.

     In fact, as a matter of common sense, Section 4A1.3 by its own term presupposes that the court has already undertaken the Chapter 4 criminal history calculation contemplated by step (f) before entertaining a "departure" later in step (i). Absent the existence of an original criminal history calculation or sentencing range, there is plainly no calculation from which to "depart." It is telling that this defendant at the time of sentencing had no problem applying the § 1B1.1 steps. The parties *agreed* in the plea agreement to the guidelines sentencing range as driven by the career offender guidelines (steps (f) and (g)), leaving open the possibility for a subsequent departure from that sentencing range for overstated criminal history (step (i)). The bottom line is that nothing in the sentencing steps outlined in § 1B1.1 undercuts the Sentencing

Commission's treatment of overstated criminal history as a true departure.

The defendant finally argues that the amended § 1B1.10(b)(2) should not apply in this case because it was not in existence at the time of the defendant's sentencing. Of course, § 1B1.10 does not apply to *sentencings*, but to provide guidance how to retroactively apply amendments of the guidelines adopted during the defendant's subsequent period of incarceration. The defendant's emphasis on what was before the sentencing court at the defendant's sentencing is irrelevant. By the defendant's logic, because the crack amendment did not exist at the time of his sentencing, the Court cannot consider it. The crack amendment was given retroactive status as part of the amended § 1B1.10 that went into effect in March 2008. There is nothing improper for the Court to consider the new § 1B1.10 – the enabling guideline -- in its entirety when determining whether to apply the crack amendments to this case.[2]

## **CONCLUSION**

Because the new crack guidelines do not lower the calculated applicable guidelines for a career offender, the defendant is not entitled to is not entitled to a sentence reduction under 18 U.S.C. § 3582(c) and § 1B1.10.

---

[2] The defendant in passing argues that the 2003 amendment to § 4A1.3, limiting the departure for § 4A1.3 to one level, has no applicability here. As discussed in the government's prior memoranda, the relevance of the amendment to this case is that it makes clear that the Sentencing Commission was hardly predisposed to give career offenders the benefit of retroactive amendments. A fair interpretation of the new § 1B1.10 is that the retroactive crack amendments simply do not apply to those who were career offenders at the date of their original sentencing.

Respectfully submitted,

NORA R. DANAHEY
ACTING UNITED STATES ATTORNEY

/s/

CHRISTOPHER W. SCHMEISSER
SENIOR LITIGATION COUNSEL
Federal Bar No. CT14806
157 Church Street, 23rd Floor
New Haven, CT  06510
Tel.: (203) 821-3754
Fax: (203) 773-5378
christopher.schmeisser@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of September, 2008, I caused a copy of the foregoing to be filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                      /s/
                CHRISTOPHER W. SCHMEISSER
                SENIOR LITIGATION COUNSEL